IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| WILLIAM G., <br><br> Plaintiff, <br> v. <br><br> UNITED HEALTHCARE, UNITED BEHAVIORAL HEALTH, and the MORGAN STANLEY MEDICAL PLAN, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS** <br><br> Case No. 1:16-cv-00144-DN <br><br> District Judge David Nuffer |

Defendants United Healthcare ("UHC"), United Behavioral Health ("UBH"), and the Morgan Stanley Medical Plan ("Plan"), collectively "Defendants," filed a Motion for Partial Dismissal[1] (the "Motion to Dismiss") in response to Plaintiff William G.'s ("Bill") Complaint.[2] The motion argues that a portion of the relief Bill seeks is barred by the Plan's limitations period for seeking judicial review. Bill responded[3] that the Plan's limitations period is unenforceable because Defendants violated the Employee Retirement Income Security Act of 1974's ("ERISA") claim procedure regulations by not disclosing the limitations period in their denial letters for his claims. And Defendants replied.[4]

Because ERISA's claim procedure regulations require plan administrators to disclose plan limitations periods in denial letters, and Defendants failed to do so in their denial letters for

---

[1] Docket no. 5, filed Feb. 2, 2017.

[2] Complaint, docket no. 2, filed Sep. 30, 2016.

[3] Memorandum in Opposition to Defendants' Motion for Partial Dismissal ("Opposition"), docket no. 17, filed Mar. 24, 2017.

[4] Reply Memorandum in Support of Defendants' Motion for Partial Dismissal ("Reply"), docket no. 24, filed Apr. 21, 2017.

Bill's claims, the Plan's limitations period is unenforceable against Bill. Therefore, Bill timely filed his Complaint within the applicable state six-year statute of limitations and Defendants' Motion to Dismiss is DENIED.

FACTUAL BACKGROUND ................................................................................................... 2
    Second Nature Treatment ........................................................................................ 3
    Waypoint Treatment ................................................................................................ 3
    Elevations Treatment ............................................................................................... 4
DISCUSSION ......................................................................................................................... 5
    ERISA's claim procedure regulations require denial letters to disclose a plan's limitations period for seeking judicial review............................................................................. 7
        The plain language of Subsection (g)(1)(iv) requires all denial letters to disclose a plan's limitations period for seeking judicial review ................................ 9
        Policy considerations support a reading of Subsection (g)(1)(iv) that requires disclosure of a plan limitations periods in denial letters .......................... 16
    Defendant's failure to disclose the Plan's limitations period in the denial letters is prejudicial and renders the limitations period unenforceable against Bill ............ 18
ORDER .................................................................................................................................. 20

## FACTUAL BACKGROUND

Bill is an employee of Morgan Stanley and a participant in the Plan.[5] The Plan is a "self-funded employee welfare benefit plan" established under ERISA.[6] Beginning in 2013, Bill's son, W.G., received medical treatment for mental health conditions at three treatment centers: Second Nature Uintahs ("Second Nature"), Waypoint Academy ("Waypoint"), and Elevations Residential Treatment Center ("Elevations").[7]

Because the dates of the insurance claims arising from these three treatment centers are critical to the analysis that follows, a brief history of W.G.'s connection to each center is provided.

---

[5] Complaint ¶ 2.

[6] *Id.* ¶ 3.

[7] *Id.* ¶¶ 7, 18.

2

### Second Nature Treatment

W.G. was admitted to Second Nature, a licensed therapeutic wilderness program for adolescents with mental health conditions, on October 14, 2013.[8] After approximately three months of treatment, W.G. was discharged from Second Nature on January 9, 2014, "with a strong recommendation for placement" at another treatment facility.[9] Sometime after W.G.'s discharge from Second Nature, Bill submitted an insurance claim to UBH, an agent for the Plan, for W.G.'s treatment at Second Nature.[10] UBH denied coverage for the treatment in a letter on October 15, 2014.[11] Bill appealed the denial on December 12, 2014.[12] And UBH maintained its denial of coverage on January 13, 2015.[13]

### Waypoint Treatment

After being discharged from Second Nature, W.G. was transferred directly to Waypoint and was admitted on January 9, 2014.[14] W.G. spent almost 19 months at Waypoint before being discharged on July 22, 2015.[15] Bill submitted an insurance claim for W.G.'s treatment at Waypoint sometime after W.G.'s admission to the facility, and UBH denied coverage because it had not been "preauthorized by UBH."[16] Bill appealed the denial on December 12, 2014.[17] UBH responded on December 23, 2014, and again on January 9, 2015, denying the insurance claim.[18]

---

[8] *Id.* ¶¶ 18-19.
[9] *Id.* ¶ 21.
[10] *Id.* ¶ 38.
[11] *Id.* ¶ 39.
[12] *Id.* ¶ 40.
[13] *Id.* ¶ 49.
[14] *Id.* ¶¶ 21-22.
[15] *Id.* ¶ 28.
[16] *Id.* ¶¶ 51-52.
[17] *Id.* ¶ 53
[18] *Id.* ¶ 54, 56.

On June 18, 2015, Bill appealed a second time and his claim was denied on July 17, 2015.[19] After both of Bill's appeals were denied, he requested an external review of the denial on February 2, 2016.[20] The reviewing entity, AllMed, upheld UBH's July 17, 2015 denial.[21]

## Elevations Treatment

W.G. transferred directly from Waypoint to Elevations on July 22, 2015.[22] W.G. was treated at Elevations for almost one year and was discharged on June 2, 2016, because he turned 18 years old and Elevations does not offer treatment programs for adults.[23] At some time after W.G.'s admission to Elevations, Bill submitted an insurance claim for W.G.'s medical expenses.[24] UBH denied the insurance claim on July 28, 2015.[25] Bill appealed the denial on January 20, 2016, and UBH denied the appeal on February 19, 2016.[26] Bill appealed again on June 14, 2016, which UBH denied as untimely on June 20, 2016.[27]

Following UBH's June 20, 2016 denial, Bill initiated this case against Defendants on September 30, 2016.[28] Bill alleges a single cause of action for benefits under ERISA and asks for review of UBH's denials of coverage for W.G.'s treatment at Second Nature, Waypoint, and Elevations.[29] Defendants challenge the timeliness of Bill's Complaint regarding W.G.'s

---

[19] *Id.* ¶¶ 57, 63.

[20] *Id.* ¶ 64.

[21] *Id.*

[22] *Id.* ¶ 28.

[23] *Id.* ¶ 36.

[24] *Id.* ¶ 67.

[25] *Id.*

[26] *Id.* ¶¶ 68-69.

[27] *Id.* ¶¶ 71, 74.

[28] *Id.*

[29] *Id.* ¶¶ 78-85.

treatment at Second Nature and Waypoint, but do not challenge the Complaint with regard to W.G.'s treatment at Elevations.[30]

## DISCUSSION

Defendants seek partial dismissal of Bill's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure based on the Plan's contractual limitations period.[31] Defendants are entitled to dismissal under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[32] When considering a motion to dismiss for failure to state a claim, the thrust of all well-pleaded facts is presumed, but conclusory allegations need not be considered.[33] And the complaint's legal conclusions and opinions are not accepted, whether or not they are couched as facts.[34]

When ruling on a motion to dismiss in an ERISA claim under Rule 12(b)(6), documents, such as Summary Plan Descriptions ("SPDs") and denial letters, may be considered if they are "referred to in the complaint" and are "central to the plaintiff's claim."[35] Consideration of these documents will not convert the motion into one for summary judgment.[36]

"ERISA does not contain a [statutory] limitations provision for private enforcement actions under 29 U.S.C. § 1132."[37] "Thus, [courts] generally apply the most closely analogous

---

[30] Motion to Dismiss at 2.

[31] *Id*.

[32] *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[33] *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[34] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); s*ee also Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

[35] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[36] *Id*.; *see also Michael C.D. v. United Healthcare*, case no. 2:15-cv-00306-DAK, 2016 WL 2888984, at *2 (D. Utah May 17, 2016).

[37] *Salisbury v. Hartford Life and Acc. Co.*, 583 F.3d 1245, 1247 (10th Cir. 2009).

statute of limitations under state law."[38] In Utah, "when dealing with a self-funded ERISA benefit plan, the most analogous statute of limitations is six years[.]"[39] However, when the parties have contractually agreed to a limitations period, "[c]hoosing which state statute to borrow is unnecessary[.]"[40] Rather, the limitations period found in the ERISA plan is enforceable and applied to the claim, so long as it is reasonable.[41]

Here, the Plan provides:

> You may not bring a lawsuit to recover benefits under a benefit plan until you have exhausted the plan's administrative process described in this SPD. If your appeal is denied, you have the right to file a lawsuit under ERISA, if it is within the **earliest** of:
> 
> - Six months following the date your appeal is denied[;]
> - Three years following the date the services you are appealing are performed[;] or
> - The end of any other applicable statutory limitation period[.][42]

The allegations in Bill's Complaint demonstrate that he did not file the Complaint within six months of the final denial letters relating to W.G.'s treatment at Second Nature and Waypoint.[43] Yet Bill does not challenge the reasonableness of the Plan's six-month limitations period. Rather, to avoid the partial dismissal of his ERISA claim, Bill argues that Utah's six-year statute of limitations applies to the claim because Defendants failed to provide specific notice of the Plan's limitations period for seeking judicial review in their final denial letters—in violation of ERISA's claim procedure regulations—thus rendering the Plan's limitations period

---

[38] *Id*.

[39] *Michael C.D.*, 2016 WL 2888984, at *2 (citing Utah Code Ann. § 78B-2-309(2)).

[40] *Salisbury*, 583 F.3d at 1247.

[41] *Id*. at 1247-48.

[42] Motion to Dismiss at Ex. A at 151, docket no. 5-1, Ex. B at 161, docket no. 5-2, Ex. C at 162, docket no. 5-3, filed Feb. 2, 2017 (emphasis in originals).

[43] Complaint ¶¶ 49, 64.

unenforceable.[44] A review of the denial letters[45] shows that they do not disclose the Plan's limitations period for seeking judicial review. Therefore, the resolution of Defendants' Motion to Dismiss turns on whether ERISA's claim procedure regulations required the denial letters to disclose the Plan's limitations period for seeking judicial review.

### ERISA's claim procedure regulations require denial letters to disclose a plan's limitations period for seeking judicial review

"Congress enacted ERISA to 'protect … the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'"[46] Therefore, ERISA provides that:

> [E]very employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits have been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.[47]

---

[44] Opposition at 10-20. Bill also argues that Defendants agreed to consolidate his three separate insurance claims under the Plan, thus delaying the start of the limitations period after the Second Nature and Waypoint denials. *Id.* at 5-10. No facts describing this alleged agreement are included in Bill's Complaint. Rather, Bill raises these facts in his Opposition. *Id*. at 2-3; *see also* Declaration of William G., docket no. 18, filed Mar. 24, 2017. Defendants argue that these new factual allegations should not be considered because a motion to dismiss is limited to the facts alleged in the complaint. Reply at 2, 6. Because Defendant's Motion to Dismiss is decided on other grounds, these arguments are not addressed.

[45] Declaration of Ngoc Han Nguyen at Ex. 1, Ex. 2, docket no. 24-1, filed Apr. 21, 2017.

[46] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (quoting 29 U.S.C. § 1001(b)).

[47] 29 U.S.C. § 1133.

"The purpose of the[se] requirements … is to 'enable the claimant to prepare adequately for any further administrative review, as well as appeal to the federal courts.'"[48]

ERISA also grants the Department of Labor authority to promulgate regulations to govern the ERISA claims procedure process.[49] Two regulatory provisions are relevant to the parties' arguments on Defendants' Motion to Dismiss—29 C.F.R. §§ 2560.503-1(g)(1) and 2560.503-1(j)(4)(i). These regulations require plan administrators to provide information about review procedures in adverse benefit determination letters.[50] Subsection (g)(1)(iv) applies to "any adverse benefit determination" and specifically requires "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action … following an adverse benefit determination on review[.]"[51] Subsection (j)(4)(i) applies only to "benefit determination[s] on review[,]" *i.e.*, final adverse benefit determinations, and requires "[a] statement describing any voluntary appeal procedures offered by the plan and the claimant's right to obtain the information about such procedures … and a statement of the claimant's right to bring [a civil] action[.]"[52]

Bill argues the plain reading of these regulations requires all denial letters to disclose a plan's limitations period for seeking judicial review.[53] On the other hand, Defendants argue that

---

[48] *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1280 (11th Cir. 2014) (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992)); *see also Richardson v. Cent. States, Se. and Sw. Areas Pension Fund*, 645 F.2d 660, 665 (8th Cir. 1981).

[49] 29 U.S.C. § 1133.

[50] 29 C.F.R. §§ 2560.503-1(g)(1), (j)(4)(i).

[51] *Id*. § 2560.503-1(g)(1)(iv).

[52] *Id*. § 2560.503-1(j)(4)(i).

[53] Opposition at 10-19.

the plain language merely requires disclosure of the right to bring a civil action and not the time limit for filing a civil action in federal court.[54]

**The plain language of Subsection (g)(1)(iv) requires all denial letters to disclose a plan's limitations period for seeking judicial review**

Defendants maintain that a proper reading of Subsection (g)(1)(iv) requires disclosure of only the time limits applicable to internal appeal procedures to be described in a denial letter, and not the limitations period for filing a civil action after the administrative process has been exhausted.[55] In other words:

> [T]he two phrases in section 2560.503-1(g)(1)(iv) could be read separately, such that a plan administrator is, first, required to include in its denial letter a "description of the plan's review procedures and the time limits applicable to such procedures," and second, required to include "a state of the claimant's right to bring a civil action," though not necessarily the time period for filing the action.[56]

However, reading the regulation in this way—as having two unrelated requirements—necessitates reading the word "including" out of Subsection (g)(1)(iv), and replacing it with the word "and."[57] Such a reading is improper because the word "including" cannot be easily removed or changed since it "modifies the word 'description,' which is followed by a prepositional phrase explaining what must be described—the plan's review procedures and applicable time limits for those procedures."[58] Therefore, it follows that "[i]f the description of the review procedures must 'includ[e]' a statement concerning civil actions, then civil actions are logically one of the review procedures envisioned by the Department of Labor['s regulation]."[59]

---

[54] Reply at 10-14.

[55] *Id*.

[56] *Santana-Diaz v. Metro. Life Ins. Co.*, 816 F.3d 172, 179 (1st Cir. 2016).

[57] *Id.* at 180.

[58] *Mirza v. Ins. Adm'r of America, Inc.*, 800 F.3d 129, 134 (3rd Cir. 2015).

[59] *Id.*

9

Accordingly, the only proper reading of Subsection (g)(1)(iv)'s plain language requires a plan administrator to disclose the plan's applicable civil action time limits in any denial letter.

This reading is further supported by the differing language choices of Subsection (g)(1)(iv) and Subsection (j)(4)(i). Specifically, Subsection (j)(4)(i) uses the phrase "appeal procedures," when referring to the requirement that a final denial letter disclose a plan's voluntary internal appeal procedures. Subsection (g)(1)(iv), on the other hand, uses the general phrase "review procedures," referring to both the internal appeal procedures of a plan and judicial review. "A familiar principle of statutory construction ... is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."[60] In other words, when particular language is included in one provision but omitted or changed in another, it is generally presumed that the drafter acted intentionally.[61] If the Department of Labor intended that Subsection (g)(1)(iv) require denial letters to disclose only time limits related to internal appeal procedures, it would have used the more narrow phrase—"appeal procedures"—found in Subsection (j)(4)(i) rather than the broader phrase—"review procedures"—when drafting Subsection (g)(1)(iv).

The three Circuit Courts of Appeals that have addressed this specific issue—the First, Third, and Sixth Circuits—have interpreted Subsection (g)(1)(iv) in this way.[62] Defendants nevertheless cite to cases from two other circuit courts of appeals—the Ninth and Eleventh Circuits—to support their interpretation.[63] However, the cases Defendants rely on are

---

[60] *Hamdan v. Rumsfeld*, 548 U.S. 557, 578, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006).

[61] *Id.*

[62] *Santana-Diaz*, 816 F.3d at 180; *Mirza*, 800 F.3d at 134; *Moyer v. Metro. Life Ins. Co.*, 762 F.3d 503, 505 (6th Cir. 2014).

[63] Reply at 12-14 (citing *Wilson v. Standard Ins. Co.*, 613 Fed. App'x 841 (11th Cir. 2015); *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899 (9th Cir. 2009)).

inapplicable and unpersuasive. In *Wilson v. Standard Ins. Co.*, the Eleventh Circuit's analysis did not rely on an interpretation of Subsection (g)(1)(iv).[64] Rather, the court determined Subsection (g)(1)(iv) was ambiguous and simply assumed the regulation required denial letters to "notify the claimant of her time for filling a lawsuit under ERISA[.]"[65] It then decided the case on equitable tolling grounds.[66] Because the Eleventh Circuit does not rely on an interpretation of Subsection (g)(1)(iv) and because a discussion of equitable tolling is unnecessary to the resolution of Defendant's Motion to Dismiss,[67] *Wilson* is inapplicable and unpersuasive.

Likewise, the Ninth Circuit's opinion in *Scharff v. Raytheon Co. Short Term Disability Plan* is inapplicable and unpersuasive because its analysis does not reference or rely on Subsection (g)(1)(iv).[68] In *Scharff*, after the plaintiff conceded that the plan administrator had met its obligations under ERISA, the Ninth Circuit merely declined to adopt a similar California state regulation that would require plan administrators to disclose civil filing deadlines in denial letters:

> Plaintiff concedes that the Plan met all applicable ERISA disclosure requirements and that [Defendant] was not obligated under ERISA to inform her of the deadline. She argues, however, that we should impose an additional "duty to inform" on claims administrators, drawn from a California insurance regulation. We decline to do so.[69]

Because the Ninth Circuit did not interpret Subsection (g)(1)(iv), *Scharff* does not persuasively support Defendants' argument.

---

[64] *Wilson*, 613 Fed. App'x at 844.

[65] *Id*.

[66] *Id.* at 845.

[67] *See infra* at 17-18.

[68] *Scharff*, 581 F.3d 899.

[69] *Id*. at 907.

11

In further support of their interpretation of Subsection (g)(1)(iv), Defendants cite a Utah District Court ruling in the case of *Michael C.D. v. United Healthcare*.[70] In *Michael C.D.*, the court declined to interpret Subsection (g)(1)(iv) to require denial letters to include the contractual imitations period for filing an ERISA claim in federal court.[71] In doing so, the court considered Subsection (j)(4)(i), which applies to only final denial letters, in conjunction with Subsection (g)(1)(iv).[72] Subsection (j)(4)(i) requires final denial letters to disclose information about a plan's voluntary internal appeal procedures, but does not expressly require plan administrators to disclose the time limits for bringing a civil suit.[73] Relying on *Michael C.D.*, Defendants argue that it is counterintuitive for plan administrators to be required to disclose time limitations in previous denial letters, but not in final denial letters—"especially where ERISA's exhaustion of administrative remedies doctrine only allows a plan participant to sue after completing any requisite appeals[.]"[74] This argument is not persuasive in light of subsection (g)(1)(iv)'s plain language.

Defendants' argument incorrectly assumes that Subsection (j)(4)(i) is the only provision that applies to final denial letters. This reading of Subsection (j)(4)(i), which renders the plain language of Subsection (g)(1)(iv) meaningless, is unacceptable. "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]"[75]

---

[70] Reply at 11-12 (citing *Michael C.D.*, 2016 WL 2888984).

[71] 2016 WL 2888984, at *4-5.

[72] *Id*.

[73] 29 C.F.R. § 2560.503-1(j)(4)(i).

[74] Reply at 13, docket no. 24.

[75] 2A N. Singer, Statutes and Statutory Construction § 46.06, pp. 181–86 (rev. 6th ed. 2000); *see also Hibbs v. Winn*, 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004).

Here, Subsections (g)(1)(iv) and (j)(4)(i) can be reconciled because Subsection (g)(1)(iv) applies to *any* adverse benefit determination—including *final* denial letters. Therefore, a *final* denial letter must meet the requirements of *both* Subsection (g)(1)(iv) and Subsection (j)(4)(i), thereby giving full effect to both regulations. Reading the regulations together reveals that Subsection (j)(4)(i) expands the requirements of Subsection (g)(1)(iv) for final denial letters—it does not eliminate them. The only language duplicated in the two regulations is the requirement that final denial letters include a statement of the claimant's right to file a civil action.[76] This duplication merely underscores the importance of providing plan participants a fair opportunity for judicial review in accordance with ERISA's purpose.[77]

A plain reading of both provisions requires that final denial letters provide a description of voluntary internal appeal procedures *in addition to* the description of review procedures required by Subsection (g)(1)(iv). There is no language in Subsection (j)(4)(i) suggesting that it eliminates the requirements of Subsection (g)(1)(iv). Rather, its language adds to the disclosure requirements of Subsection (g)(1)(iv) to include voluntary internal appeals procedures that have not yet occurred.[78] Reading Subsection (j)(4)(i) to eliminate the disclosure requirements of Subsection (g)(1)(iv) would render meaningless Subsection (g)(1)(iv)'s language requiring the disclosure of a plan's review procedures, including the applicable time limits for filing a civil action, in any adverse determination letter.[79] Subsection (j)(4)(i) may not be read to conflict with Subsection (g)(1)(iv) or render it meaningless.[80] Therefore, reading Subsection (j)(4)(i) in

---

[76] 29 C.F.R. § 2560.503-1(g)(1)(iv), (j)(4)(i).

[77] *See supra* at 7; *see also infra* at 15-16.

[78] 29 C.F.R. § 2560.503-1(j)(4)(i).

[79] *See supra* at 9.

[80] *Hibbs*, 542 U.S. at 101.

concert with Subsection (g)(1)(iv) requires plan administrators disclose a plan's voluntary internal appeal procedures *and* the plan's civil action limitations period in final denial letters. This reading also makes practical sense because the voluntary internal appeal procedures and the civil action limitations periods are the only remaining options for a claimant seeking to challenge a denial of coverage following the issuance of a final denial letter.

Defendants' argument regarding the plain language of Subsection (g)(1)(iv) also relies on the Tenth Circuit's unpublished decision in *Young v. United Parcel Servs., Inc.*[81] In *Young*, the court interpreted a contractual provision in the UPS Summary Plan Description.[82] The provision is nearly identical to Subsection (g)(1)(iv), except the UPS plan required disclosure of time limits applicable to "appeal procedures[.]"[83] Subsection (g)(1)(iv) uses the phrase "review procedures."[84] The plan participant in *Young* argued that the language of the contractual provision required disclosure of civil action time limits, but the Tenth Circuit disagreed.[85] The court interpreted "appeals procedures" to refer only to the internal appeal procedures required under ERISA, which is not to be confused "with the filing of a legal action after that process has been fully exhausted."[86]

Defendants argue that because the language is similar, the Tenth Circuit would find that Subsection (g)(1)(iv) does not require disclosure of civil action time limits.[87] In a recent decision

---

[81] Reply at 11-12 (citing *Young*, 416 Fed. App'x 734 (10th Cir. 2011)).

[82] *Young*, 416 Fed. App'x at 737.

[83] *Id.* at 739.

[84] 29 C.F.R. § 2560.503-1(g)(1)(iv).

[85] *Young*, 416 Fed. App'x at 740.

[86] *Id.*

[87] Reply at 11-12.

from the District of Utah, District Judge Tena Campbell rejected this application of *Young*, stating:

> A civil suit is commonly referred to as "judicial review" of a plan administrator's decision not, commonly, an appeal. Though the language of the UPS plan differs only subtly from the language of Subsection (g)(1)(iv), the distinction casts doubt on whether the Tenth Circuit's reasoning in *Young* would apply equally to an interpretation of Subsection (g)(1)(iv).[88]

Judge Campbell's analysis is persuasive. The Tenth Circuit's holding in *Young*, that the specific phrase "appeals procedures" in the UPS Plan only refers to the internal appeals procedures, does not rule out that the Department of Labor intended the more general phrase—"review procedures"—to include both the internal appeals procedures and judicial review.[89] Indeed, the term "review" is used interchangeably in the Department of Labor's ERISA regulations to reference both internal appeals procedures and judicial review, while the term "appeal" is used to refer to only internal appeals procedures.[90]

This interpretation is supported by the Supreme Court's discussion of ERISA's remedial scheme in *Heimeshoff v. Hartford Life & Acc. Ins. Co.*:

> The first tier of ERISA's remedial scheme is the *internal review* process required for all ERISA disability-benefit plans. … Upon exhaustion of the internal review process, the participant is entitled to proceed immediately to *judicial review*, the second tier of ERISA's remedial scheme.[91]

The Supreme Court's reference to ERISA's "two-tiered remedial scheme" encompasses both the internal appeals procedures and judicial review, indicating that judicial review is an equal, albeit secondary, partner to the internal appeals procedures in ERISA's review process.[92] The use of

---

[88] Order on Motion to Dismiss at 13, ECF no. 26 in *John H. v. United Healthcare*, case no. 1:16-cv-00110-TC, entered Apr. 26, 2017 (internal citations omitted).

[89] *See supra* at 10.

[90] *See, e.g.,* 29 C.F.R. §§ 2560.503-1(h)(4)(i)-(ii), (l)(2)(i)-(ii).

[91] 134 S.Ct. 604, 613, 187 L.Ed.2d 529 (2013) (emphasis added).

[92] *Id.*

"review" to describe both internal appeals procedures and judicial review also cuts against Defendants' argument that "appeals procedures" and "review procedures" should be interpreted as having the same meaning, *i.e.*, only a plan's internal appeals procedures.

Because the opportunity for judicial review is inseparably bound up in ERISA's remedial scheme,[93] it cannot be ignored when interpreting the Department of Labor's regulations. These regulations are designed to advance ERISA's remedial scheme and purpose of enabling claimants to adequately prepare for any further administrative appeals and judicial review. Indeed, and as will be discussed,[94] policy considerations in furthering this purpose support the conclusion that a plain reading of Subsection (g)(1)(iv) requires disclosure of civil action time limits.

Therefore, the Tenth Circuit's unpublished decision in *Young* does not control the interpretation of Subsection (g)(1)(iv) because there is no indication that the court either reviewed the express language of Subsection (g)(1)(iv), or considered the policy concerns that often pervade a regulation interpretation case.[95] The Tenth Circuit was merely interpreting a contract between two parties and did not balance the important policy considerations surrounding ERISA's purpose or its regulations. Accordingly, *Young* does not persuasively support Defendants' interpretation of Subsection (g)(1)(iv).

**Policy considerations support a reading of Subsection (g)(1)(iv) that requires disclosure of a plan limitations periods in denial letters**

"[B]ecause ERISA is remedial legislation [it] should be liberally construed to effectuate Congress's intent to protect plan participants."[96] As mentioned, to protect plan participants

---

[93] *Witt*, 772 F.3d at 1280.

[94] *See infra* at 16-18.

[95] *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

[96] *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1086 (8th Cir. 2009).

16

ERISA affords them "a reasonable opportunity … for a full and fair review[,]"[97] including judicial review in federal court.[98] A reading of Subsection (g)(1)(iv) that requires a denial letter's disclosure of the plan's civil action limitations periods supports this goal. Any other interpretation would allow plan administrators to "easily hide the ball and obstruct access to the courts."[99] Indeed, the six-month time limit provisions applicable in this case are located on pages 151, 161, and 162 of the SPDs.[100] In contrast, UBH's denial letters are only six pages long.[101] As the Third Circuit rhetorically asked: "Which is a claimant more likely to read—a [186] page description of the entire plan or a [six]-page letter that just denied thousands of dollars in requested benefits?"[102] A relatively simple requirement to disclose the plan's civil action limitations period in a denial letter prevents plan administrators from "hid[ing] the ball" and potentially denying plan participants access to judicial review.[103]

Additionally, by not including a statute of limitations for ERISA actions, Congress essentially gave plan administrators the authority to create their own limitations periods for judicial review. Because this flexibility would advantage plan administrators by giving them the ability to substantially shorten a plan's civil action limitations period,[104] it is understandable that the Department of Labor would want to make sure claimants are aware of the time limits.[105] The

---

[97] 29 U.S.C. § 1133.

[98] *Santana-Diaz*, 816 F.3d at 178-79 (citing *Witt*, 772 F.3d at 1280).

[99] *Mirza*, 800 F.3d at 135.

[100] Motion to Dismiss at Ex. A at 151, docket no. 5-1, Ex. B at 161, docket no. 5-2, Ex. C at 162, docket no. 5-3, filed Feb. 2, 2017 (emphasis in originals).

[101] Declaration of Ngoc Han Nguyen at Ex. 1, Ex. 2, docket no. 24-1, filed Apr. 21, 2017.

[102] *Mirza*, 800 F.3d at 135.

[103] *Id.*

[104] *Compare* Motion to Dismiss at Ex. A at 151, docket no. 5-1, Ex. B at 161, docket no. 5-2, Ex. C at 162, docket no. 5-3, filed Feb. 2, 2017 *with* Utah Code Ann. § 78B-2-309(2).

[105] *Mirza*, 800 F.3d at 135-36.

importance of protecting plan participants under ERISA and providing them a fair opportunity for both internal appeals procedures and judicial review far outweighs the relatively small burden the disclosure requirement places on plan administrators.

### Defendant's failure to disclose the Plan's limitations period in the denial letters is prejudicial and renders the limitations period unenforceable against Bill

Having determined that the plain language of Subsection (g)(1)(iv) requires plan administrators to disclose limitations period information in final denial letters, there are two potential consequences for a violation of the regulation. The first option is to undertake an equitable tolling analysis, as the Eleventh Circuit did in *Wilson*,[106] to determine if Bill was on notice of his right to file a civil action and was prevented from timely filing due to extraordinary circumstances. The second option is to take the approach of the First, Third, and Sixth Circuits,[107] by presuming prejudice and rendering the Plan's limitations period unenforceable against Bill.

Defendants argue that the equitable tolling analysis should control and that no extraordinary circumstances prevented Bill from filing his Complaint within the Plan's time limitation. However, this argument is unpersuasive because a plan administrator may always argue that a claimant was on notice of the limitations period because the contractual deadline is in the plan documents, and copies of the plan documents are given or made available to all plan participants.[108] Such an approach would make Subsection (g)(1)(iv)'s disclosure requirements irrelevant. Indeed, "[t]o accept that plan administrators may … dodge this simple regulatory obligation so long as claimants have received the plan documents at some point during their

---

[106] *Wilson*, 613 Fed. App'x at 844-45.

[107] *Santana-Diaz*, 816 F.3d at 180; *Mirza*, 800 F.3d at 134; *Moyer*, 762 F.3d at 505.

[108] *Mirza*, 800 F.3d at 137.

18

tenure as employees, would … effectively make [Subsection] (g)(1)(iv) a 'dead letter.'"[109] Further, requiring extraordinary circumstances is inconsistent with ERISA's purpose of affording claimants "a *reasonable* opportunity … for a full and fair review[,]"[110] including in federal court.[111] Therefore, the equitable tolling approach will not be applied to Bill. Rather, the approach of the First, Third, and Sixth Circuits[112] is appropriate to resolve the issue.

Therefore, because Defendants failed to comply with Subsection (g)(1)(iv) by not including the Plan's civil action limitations period in their denial letters to Bill, prejudice is presumed and the Plan's limitations period is unenforceable against Bill. Accordingly, the applicable state six-year statute of limitations[113] applies to the portion of Bill's ERISA claim for W.G.'s treatment at Second Nature and Waypoint.[114] It is undisputed that the final denial on internal appeal occurred on January 13, 2015, for W.G.'s treatment at Second Nature, and on July 17, 2015, for W.G's treatment at the Waypoint.[115] Thus, on September 30, 2016, Bill timely filed his Complaint within the applicable state six-year statute of limitations.

---

[109] *Santana-Diaz*, 816 F.3d at 184.

[110] 29 U.S.C. § 1133 (emphasis added).

[111] *Santana-Diaz*, 816 F.3d at 178-79 (citing *Witt*, 772 F.3d at 1280).

[112] *Id*. at 180; *Mirza*, 800 F.3d at 134; *Moyer*, 762 F.3d at 505.

[113] Utah Code Ann. § 78B-2-309(2).

[114] *See Michael C.D.*, 2016 WL 2888984, at *2.

[115] Complaint ¶¶ 49, 63; *see also* Motion to Dismiss at 3-4.

**ORDER**

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss[116] is DENIED.

Signed June 2, 2017.

BY THE COURT

_____
District Judge David Nuffer

---

[116] Docket no. 5, filed Feb. 2, 2017.